UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROBERT TAYLOR, JR., ET AL                               CIVIL ACTION

v.                                                      NO. 17-7668

DENKA PERFORMANCE ELASTOMER LLC, ET AL                  SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's motion to dismiss under Rule 12(b)(6). For the following reasons, the motion is DENIED.

**Background**

This environmental tort litigation arises from the production of neoprene at the Pontchartrain Works Facility ("PWF") in St. John the Baptist Parish. Neoprene production allegedly exposes those living in the vicinity of the PWF to concentrated levels of chloroprene well above the upper limit of acceptable risk, and may result in a risk of cancer more than 800 times the national average.

Thirteen people living St. John the Baptist Parish filed this lawsuit originally seeking injunctive relief in the form of abatement of chloroprene releases from their industrial neighbor, the PWF. The PWF is the only facility in the United States still manufacturing neoprene, which is made from chloroprene, and which

the Environmental Protection Agency has classified as a "likely human carcinogen."

These facts are drawn from the allegations advanced in the Third Amended and Restated Complaint. E.I. Dupont de Nemours & Co. ("DuPont") invented neoprene in 1931. Neoprene is a synthetic rubber used in chemical and weather resistant products such as wet suits and orthopedic braces. It is also used as a base resin in adhesives, electrical insulation, and coatings. In 1969, DuPont built a neoprene manufacturing unit at its Pontchartrain Works facility in LaPlace, Louisiana. Chloroprene, a component of neoprene, is manufactured at the site. During the manufacturing process, chloroprene is emitted into the air and discharged into the water.

By 2008, the PWF was the only facility manufacturing neoprene in the United States. Effective November 1, 2015, DuPont sold the PWF to Denka Performance Elastomer LLC, but DuPont retained ownership of the land underlying the facility.

It is alleged that Denka had knowledge of harmful concentrations of chloroprene emitted from the PWF, but concealed

its knowledge and associated data[1] from the Environmental Protection Agency ("EPA"), the Louisiana Department of Environmental Quality (LDEQ), and local St. John the Baptist Parish officials. The EPA, in addition to classifying chloroprene as a "likely human carcinogen" has noted that

> [s]ymptoms reported from acute human exposure to high concentrations of chloroprene include giddiness, headache, irritability, dizziness, insomnia, fatigue, respiratory irritation, cardiac palpitations, chest pains, nausea, gastrointestinal disorders, dermatitis, temporary hair loss, conjunctivitis, and corneal necrosis.... Acute exposure may [also]: damage the liver, kidneys, and lungs; affect the circulatory system and immune system; depress the central nervous system (CNS); irritate the skin and mucous membranes; and cause...respiratory difficulties in humans.

The agency has also concluded that the primary route of exposure to chloroprene is through inhalation.

In December 2015, the EPA again classified chloroprene as a likely human carcinogen when it released a screening-level National Air Toxics Assessment (NATA), which analyzes exposure levels to toxins, estimates the expected number of incidences of cancer per one million people based on exposure to air toxins from industry, and also announces an upper limit of "acceptable risk"

---

[1] Including an alleged Material Safety Data Sheet that noted that "respiratory irritation, eye irritation, and nausea and vomiting can result from exposure to chloroprene."

threshold.[2] The NATA acceptable risk exposure threshold for chloroprene was established as 0.2 µg/m³; that is, chloroprene emissions must stay below .2 micrograms per cubic meter[3] in order to comply with the limit of acceptable risk threshold (which is a risk of 100 in one million people).

Despite knowledge of this upper limit of the acceptable risk threshold, it is alleged that DPE continues to emit chloroprene at hundreds of times the 0.2 µg/m³ threshold. Since May 25, 2016, the EPA has collected 24-hour air samples every three days from six locations around the Pontchartrain Works facility; air samples at all six locations frequently exceed 700 times the 0.2 µg/m³ threshold. DPE's own sampling numbers at five locations surrounding the facility indicate that average chloroprene emissions range from 20.4 to 33.25 times the 0.2 µg/m³ threshold.

The EPA's National Enforcement Investigation Center ("NEIC") conducted a Clean Air Act ("CAA") inspection of the Pontchartrain Works facility in June 2016.[4] A copy of the redacted inspection

---

[2] Exposure above the designated "acceptable risk" represents an unacceptable risk of cancer from exposure from the toxin.
[3] The concentration of an air pollutant is measured in units of density.
[4] Meanwhile, representatives of DuPont and DPE allegedly told members of the community that there was no danger arising from the facility's chloroprene emissions, and on December 8, 2016, LDEQ Secretary Chuck Brown told members of the community that those expressing concern regarding chloroprene emissions were

report from the EPA's CAA inspection was publicized on April 3, 2017. The NEIC inspection report revealed various areas of non-compliance by both DuPont and DPE in their operation of the facility, including failure to adhere to monitoring, recordkeeping, and reporting requirements for the chloroprene vent condenser; failure to replace leaking valves; failure to include appropriate emissions factors in air permit application materials; and failure to institute appropriate emissions controls for the chloroprene Group I storage tank.

On January 6, 2017, DPE entered into an Administrative Order on Consent ("AOC") with LDEQ with a target to reduce its chloroprene emissions by 85 percent. Even if this reduction is achieved, the plaintiffs allege that DPE's emission levels will nevertheless exceed the 0.2 µg/m³ threshold. In any event, it is alleged that DPE has failed to meet all interim requirements for emission controls and emissions concentrations that it agreed to in the AOC.

According to the EPA, "[t]he top 6 census tracts with the highest NATA-estimated cancer risks nationally are in Louisiana due to Denka (formerly DuPont) chloroprene emissions." The NATA

---

"fearmongerers" and, plaintiffs submit, he said, "forget about 0.2."

5

assessment reports that the cancer risk for the census tracts in the vicinity of the Pontchartrain Works facility is 3.365 per million, while the cancer risk from chloroprene exposure in those census tracts ranges from 158.515 to 768.46 per million, all well above the acceptable risk level recommended by the EPA.

Instead of reducing chloroprene emissions in compliance with the EPA's 0.2 µg/m³ threshold, on June 26, 2017, DPE representatives submitted a Request for Correction to the EPA in which they sought to increase the 0.2 µg/m³ threshold in order "to prevent further significant damage to" their business.[5]

Robert Taylor, Jr., individually and on behalf of his minor daughter, N.T., Kershell Bailey, Shondrell P. Campbell, Gloria Dumas, Janell Emery, George Handy, Annette Houston, Rogers Jackson, Michael Perkins, Allen Schnyder, Jr., Larry Sorapuru, Sr.,[6] Kellie Tabb, and Robert Taylor, III are all individuals living near the PWF in Reserve, Edgard, and LaPlace, Louisiana. On June 29, 2017, these individuals, individually and as representatives of a putative class of similarly situated

---

[5] On January 25, 2018, the EPA wrote a detailed letter to DPE, rejecting its Request for Correction. The EPA's response leaves undisturbed its determinations that chloroprene is a likely human carcinogen and 0.2 µg/m³ is the upper limit of acceptable risk exposure threshold for chloroprene.
[6] The Court has previously called attention to this person's petulant public comments.

plaintiffs, sued DPE and DuPont in the Louisiana 40th Judicial District Court in St. John the Baptist Parish. The plaintiffs allege that DuPont has emitted chloroprene for many years at levels resulting in concentrations many times the upper limit of acceptable risk, and DPE continues to do so. The plaintiffs advance Louisiana state law causes of action for nuisance, trespass, negligence, and strict liability; they seek injunctive relief in the form of abatement of chloroprene releases such that the concentration of chloroprene does not exceed the 0.2 µg/m³ threshold; damages for deprivation of enjoyment of occupancy of property; punitive damages; and additional damages including medical monitoring to the extent personal injury claims become mature.

The defendants jointly removed the lawsuit, invoking this Court's diversity jurisdiction. The Court denied the plaintiffs' motion to remand. The plaintiffs filed an untimely request to extend the deadline to seek class certification, which the defendants opposed. The Court denied the plaintiffs' request to extend the deadline to seek class certification, and later denied the plaintiffs' motion to reconsider its ruling. See Order and Reasons dtd. 2/22/18.

Thereafter, the plaintiffs filed their Second Amended and Restated Class Action Complaint and DPE and DuPont filed Rule 12

motions to dismiss. On July 26, 2018, this Court granted DuPont's motion to dismiss for lack of subject matter jurisdiction, but allowed the plaintiffs to amend their complaint to correct deficiencies in their nuisance allegations as they apply to DPE. See Order and Reasons dtd. 7/26/18. The plaintiffs then filed a Third Amended and Restated Complaint solely against DPE, seeking injunctive relief only for the nuisance claim. DPE now moves to dismiss the third amended complaint under 12(b)(6).

I. *Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for the dismissal of a complaint for failure to state a claim upon which relief can be granted. Such motions are rarely granted because they are viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

8

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). The Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

II. *Discussion*

The defendants move to dismiss this lawsuit under Rule 12(b)(6) on the grounds that the plaintiffs still fail to plead a plausible claim for relief. The defendants contend that the plaintiffs fail to allege factual and legal elements to state a claim for injunctive relief and that the plaintiffs' nuisance claim fails to plead factual allegations based on their alleged exposure to chloroprene.

The plaintiffs counter that their third amended complaint alleges specific facts regarding how Denka's chloroprene emissions constitute a nuisance for each plaintiff. The plaintiffs further

10

submit that the defendants ignore the permissive 12(b)(6) standard by arguing numerous fact issues regarding causation of the plaintiffs' alleged harms and that this procedural stage is not proper for such arguments. The Court agrees.

*A.*

The Court observes, as it did in its previous Order and Reasons allowing the plaintiffs to amend their complaint, that the plaintiffs' allegations suffice to state a claim for nuisance within the meaning of Louisiana Civil Code articles 667-669. The Louisiana Supreme Court has observed:

> These obligations of vicinage are legal servitudes imposed on the owner of property. These provisions embody a balancing of rights and obligations associated with the ownership of immovables. As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property which "...occasion some inconvenience to his neighbor." However, his extensive rights do not allow him to do "real damage" to his neighbor.

Rodrigue v. Copeland, 475 So.2d 1071, 1077 (La. 1985). Nuisance describes the type of conduct that violates the Code.

Louisiana Civil Code article 667, Limitations on use of property, states:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage,

11

that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care....

Louisiana Civil Code article 668, Inconvenience to neighbor, states:

> Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
>
> Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage.

Louisiana Civil Code article 669, Regulation of inconvenience, states:

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

*B.*

Unlike the plaintiffs' second amended complaint, this time, the plaintiffs offer not only detailed "background facts" providing an overview of the PWF and the EPA's designation of chloroprene as a likely human carcinogen, but also a factual predicate detailing how the chloroprene exposure constitutes a nuisance allegedly perpetrated as to each plaintiff. Paragraph 45

12

of the third amended complaint states that each plaintiff has been "deprived of enjoyment of his or her property and has thus incurred harm, due to exposure to unacceptably high concentrations of chloroprene emissions in excess of 0.2 µg/m³ . . . and that deprivation of enjoyment thereby constitutes a nuisance." Paragraph 45 is followed by individualized descriptions and facts detailing each plaintiff's alleged harm due to chloroprene exposure. Each plaintiff specifically alleges that time spent outdoors or exposure to outside air on their properties manifests itself in the form of, among other alleged injuries, chronic headaches, fatigue, chest pain, stomach problems, kidney disease, skin irritation, occasional chest pain, and dizziness. The defendant submits that the third amended complaint alleges merely speculative injuries and that there must be more than unfounded fear on the part of the plaintiffs to state an actionable nuisance cause of action. Yet, in paragraph 47, the plaintiffs allege that several of the plaintiffs have taken urinalysis tests that have confirmed the presence of chloroprene metabolites in their bodies. Accepting the plaintiffs' allegations as true, these alleged injuries and fear of chloroprene exposure rise above the speculative level.[7]

---

[7] Whatever the facts will survive a merits contest awaits trial.

Each plaintiff further submits that these physical manifestations of their alleged chloroprene exposure abate when inside their homes or away from their properties.[8] The defendant disputes the causation of these injuries and suggests that any number of sources could be responsible for the symptoms. Maybe so. But at this procedural stage, it is not the appropriate setting for dismissal.

The Court finds that the latest complaint contains sufficient factual allegations to state a nuisance claim and avoid dismissal.

Accordingly, IT IS ORDERED: that the defendant's motion to dismiss is DENIED.

New Orleans, Louisiana, October 31, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8] Paragraph 45.13 alleges that one plaintiff, on the advice of her physician, has even relocated outside the area allegedly affected by chloroprene exposure, and her symptoms have since abated. In paragraph 45.5, another plaintiff who is employed as a delivery driver, attempts to take routes outside the alleged affected area to avoid the symptoms he usually experiences when outdoors. These more detailed factual allegations stand in stark contrast to the generic allegations set forth in prior complaints, and survive Rule 12(b)(6) dismissal.